UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

GENERATION II ORTHOTICS, INC., a British Columbia company; and GENERATION II USA INC., a Washington corporation,

Plaintiffs,

v.

MEDICAL TECHNOLOGY INC., d/b/a BLEDSOE BRACE SYSTEMS, a Texas corporation,

Defendant.

CASE NO. C95-1842C

ORDER

I.  INTRODUCTION

This matter has come before the Court on several post-trial motions: (1) Defendant's renewed motion for judgment as a matter of law (Dkt. No. 302), (2) Plaintiffs' motion for prejudgment interest (Dkt. No. 300), and (3) Plaintiffs' motion for enhanced damages and attorney fees (Dkt. No. 316). For the reasons that follow, Defendant's motion is DENIED, Plaintiffs' motion for prejudgment interest is GRANTED and Plaintiffs' motion for enhanced damages and attorney fees is GRANTED in part and DENIED in part.

ORDER – 1

II.   BACKGROUND

After ten years of litigation, this patent infringement action went to trial on March 28, 2005. After a week's worth of testimony, the jury returned a verdict for Plaintiffs, finding that Defendant's Thruster and Thruster 2 knee braces infringed upon claims 1, 2, 9, 16, 18, 19, 20 and 21 of Plaintiffs' patent, United States Patent No. B1 5,302,169 ("the '169 patent") and claim 1 of United States Patent No. 5,400,806 ("the '806 patent").

Defendant now moves for judgment as a matter of law, finding fault with the Court's construction of various terms in the '169 and '806 patents, and arguing that undisputed facts establish that the asserted claims of the '169 and '806 patents are obvious as a matter of law over the prior art. In addition, Defendant also argues that Plaintiffs may not recover lost profits.

III.  ANALYSIS

   *A.   Defendant's motion for judgment as a matter of law*

Federal Rule of Civil Procedure 50(a) provides that a court may render judgment as a matter of law ("JMOL") "[i]f during a trial by jury a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue." In addressing a motion for JMOL, a court should review the record as a whole and draw all reasonable inferences in favor of the non-moving party. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). "JMOL should be granted only if the verdict is 'against the great weight of the evidence, or it is quite clear that the jury has reached a seriously erroneous result.'" *Hangarter v. Provident Life & Accident Ins. Co.*, 373 F.3d 998, 1005 (9th Cir. 2004) (citing *EEOC v. Pape Lift, Inc.*, 115 F.3d 676, 680 (9th Cir. 1997)).

For the reasons that follow, the Court finds that Defendant has failed to show that the verdict is against the great weight of the evidence.

ORDER – 2

*1.     Obviousness*

35 U.S.C. § 103(a) provides

> A patent may not be obtained . . . if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains.

As Defendant points out, the obviousness of a patent is a question of law based upon certain factual inquiries, commonly referred to as "*Graham* inquiries". *See Graham v. John Deere*, 383 U.S. 1, 17 (1966). These inquiries consist of a four-pronged analysis which examines (1) the scope and content of the prior art, (2) the differences between the prior art and the claims at issue, (3) the level of ordinary skill in the pertinent art, and (4) secondary considerations of non-obviousness. *Id.*; *see also B.F. Goodrich Co. v. Aircraft Braking Sys. Corp.*, 72 F.3d 1577, 1582 (Fed. Cir. 1996). Defendant must show obviousness by clear and convincing evidence. *Dennison Mfg. Co. v. Panduit Corp.*, 475 U.S. 809, 810 (1986).

The locus of disagreement between the parties is whether the combination of the prior art Generation II Unloader brace and the Greissinger and Grabowski patents made Plaintiffs' innovation of using an adjustable joint to control the medial/lateral inclination of a stiff brace arm while supporting the knee obvious to one of skill in the art. At trial, Plaintiffs' mechanical engineer expert, Dr. Tony Keaveny, testified that even in light of the Greissinger and Grabowski patents, the claims in the '169 patent would not have been obvious to a person of ordinary skill in the art because

> the invention that you have is a knee brace that supports the knee. So I think a number of aspects of the overall brace would have to change to do this. So it's not simply lift this from one device and literally pop it into the other and you're all set. I think the entire brace has to be altered to do this.

(Mar. 28 Trial Tr. at 38:9-38:14.) Defendant is correct that Dr. Keaveny's opinion cannot be used by the Court as a legal conclusion regarding non-obviousness. However, the Court can use his opinion as a pertinent data point in the obviousness inquiry. In similar fashion, the Court finds the fact that the patent examiner upheld the '169 patent without substantial change even after considering the Greissinger and

ORDER – 3

Grabowski references a useful data point.[1]

The evidence introduced at trial demonstrated that neither the Grabowski nor the Greissinger devices provided support that would take force off the knee joint.[2] In addition, the evidence showed that this lack of support fundamentally altered the working of the brace so that, in Dr. Keaveny's words, the medial-lateral adjustable joint could not be "lifted" from Grabowski and Greissinger and "popped" into Plaintiffs' device. Most important, Defendant failed to introduce clear and convincing evidence that this was not the case. In other words, in order to sustain its burden and prevail on its obviousness claim, Defendant would have to show by clear and convincing evidence that (1) the fact that Plaintiffs' device provides support to the knee (in the sense of taking force off the knee joint) did not fundamentally alter the brace so that (2) a simple transposition of the joint mechanism from Grabowski or Greissinger would be feasible. Because Defendant has not mustered such evidence, Defendant's obviousness claim must fail.

---

[1] The Court notes that Defendant's argument regarding the weight (or lack thereof) of the patent examiner's consideration of prior art has already been considered and rejected by this Court in its order docketed at No. 218.

> Defendant argues that the issue of whether and to what extent the examiner at the PTO considered the cited references is largely irrelevant to the inquiry here. This is because "[t]he Examiner's decision, on an original or a reissue application, is never binding on a court. It is, however, evidence the court must consider in determining whether the party asserting invalidity has met its statutory burden by clear and convincing evidence." *Fromson v. Advance Offset Plate, Inc.*, 755 F.2d 1549, 1555 (Fed. Cir. 1985) (citing *Am. Hoist Derrick Co. v. Sowa & Sons*, 725 F.2d 1350, 1359-60 (Fed. Cir. 1984)). This latter principle does not necessarily lead to Defendant's assertion. The question of what the examiner did or did not consider may not be dispositive, but it may still be relevant. Even though, as Defendant points out, "[t]he burden to prove invalidity is neither strengthened or weakened by whether the examiner actually considered the prior art references," a showing that the examiner had failed properly to consider the prior art references could assist Defendant in sustaining its burden.

(Order at 11.)

[2] In addition to Dr. Keaveny's testimony, Defendant's own expert, Dr. Edward Grood, testified about the use of the Grabowski device to straighten out children's legs. (Mar. 31 Trial. Tr. at 2-4.)

ORDER – 4

   *2.   Lost profits*

In order to obtain an award of lost profits, Plaintiffs must answer the question "'but for' infringement it reasonably would have made the additional profits enjoyed by the infringer." *Micro Chem v. Lextron, Inc.*, 318 F.3d 1119, 1122 (Fed. Cir. 2003). "In proving his damages, the patent owner's burden of proof is not an absolute one, but rather a burden of reasonable probability." *Lam, Inc. v. Johns-Manville Corp.*, 718 F.2d 1056, 1065 (Fed. Cir. 1983).

Plaintiffs established with reasonable probability that the market for osteoarthritic braces is not segmented into custom-made and off-the-shelf segments. Mr. John Hansen, Plaintiffs' damages expert, testified that in his opinion, there was no such segmentation of the market. In addition, Plaintiffs showed that a Frost and Sullivan industry report did not recognize such a segmentation. Finally, Defendant itself has conceded that it regarded Generation II as a competitor. For these reasons, the Court finds that the evidence, even including Mr. Bledsoe's testimony regarding segmentation, was more than enough for a reasonable jury to conclude that Plaintiffs has sustained their burden of reasonable probability with respect to the fact that Defendant's Thruster and Thruster 2 braces occupied the same market as Plaintiffs' devices.

The Court also finds that the evidence elicited at trial was sufficient for a jury to find that the Aligner brace was not an available, sufficient non-infringing substitute. Although it is true that an alternative need not actually be sold to be considered "available" for the purposes of the damages analysis, *Grain Processing Corp. v. American Maize-Products, Co.*, 185 F.3d 1341, 1349 (Fed. Cir. 1999), the alternative must be a sufficient one. Defendant argues (1) the Aligner was "half the Thruster" and (2) the Aligner provides all the functionality of the infringing Thruster brace[3]. While this testimony is

---

[3]Mr. Gary Bledsoe testified on cross-examination that if there were to be a problem selling the Thruster 2, he could quickly "redesign a super Aligner or something like that, yes, right away . . . . [j]ust change the angle to increase the thrust on it so that it thrusts like a Thruster 2 and pretty it up with some nice covers." (Mar. 31 Trial Tr. at 147:20-147:25.)

ORDER – 5

certainly sufficient to raise the possibility that the Aligner was an available, sufficient non-infringing substitute, the question now before the Court is whether the jury's award of lost profit damages is seriously erroneous in light of this evidence. The Court is mindful that the textual content of the testimony was not the only evidence available to the jury – the jury had the opportunity to weigh the credibility of the testimony as it was being delivered, and the greater context of Mr. Bledsoe's testimony as a whole. In addition, the jury was given the opportunity to examine the braces and observe their operation. Given these considerations, the Court cannot conclude that the jury committed a serious error in making the necessary finding that the Aligner was not an available, sufficient, non-infringing substitute.

Finally, Defendant challenges the award of lost profits on the grounds that the damages expert, Mr. Hansen, based his calculations on unreliable facts. However, the Court finds that Defendant's challenges are based on a misinterpretation of Mr. Hansen's methodology. At trial, Defendant sought to show that Mr. Hansen's calculations resulted in various inconsistencies between estimated market shares and actual unit sales figures (*e.g.*, that the estimated market shares multiplied by an estimated total annual unit sales figures yielded numbers inconsistent with known actual unit sales for Bledsoe and Gen II). However, inconsistencies of this type can be irrelevant and/or insignificant. The estimated market shares could easily be fairly accurate, yet have been applied to an inaccurate estimated total annual unit sales figure. Comparing the multiplied figures to an actual unit sales figure is comparing apples to oranges. For this reason, the Court finds that Defendant has failed to show that the jury committed a serious error in finding that Plaintiffs had presented evidence sufficient to sustain their burden of reasonable probability with respect to the amount of lost profits.

Accordingly, Defendant's motion for JMOL with respect both to obviousness and to lost profits must be DENIED.

    *B.*    *Plaintiffs' motion for enhanced damages, attorney fees and prejudgment interest*

35 U.S.C. § 284 provides that a court may increase a damages award up to three times the compensatory amount. Although the statute is silent as to the circumstances under which a court should

ORDER – 6

award enhanced damages, the Federal Circuit Court of Appeals has identified nine factors that are relevant:

> (1) whether the infringer deliberately copied the ideas or design of another; (2) whether the infringer, when he knew of the other's patent protection, investigated the scope of the patent and formed a good-faith belief that it was invalid or that it was not infringed; . . . (3) the infringer's behavior as a party to the litigation; . . . (4) Defendant's size and financial condition; (5) closeness of the case; (6) duration of Defendant's misconduct; (7) remedial action by the Defendant; (8) Defendant's motivation for harm; and (9) whether Defendant attempted to conceal its misconduct.

*Read Corp. v. Portec, Inc.*, 970 F.2d 816, 827 (Fed. Cir. 1992) (citations omitted), *abrogated in part on other grounds*, *Markman v. Westview Instruments, Inc.*, 52 F.3d 967 (Fed. Cir. 1995). The Court is mindful, however, that despite the *Read* Court's enumeration of these factors, "[t]he paramount determination in deciding to grant enhancement and the amount thereof is the egregiousness of the defendant's conduct based on all the facts and circumstances." *Id.* at 826. Therefore, a finding of willfulness, while extremely relevant, does not mandate a trebling of the award. *Id.*

The jury's finding of willfulness is instructive with respect to elements 1, 2, and 6. The jury's willfulness finding, and a finding adverse to Defendant on these three elements, was supported by substantial evidence at trial. The evidence reflects that Plaintiffs began showing their brace in February 1994, at the convention for the American Academy of Orthopedic Surgeons ("AAOS"). Defendant began developing its own brace in April or May of 1994. Mr. Gary Bledsoe testified that Defendant began to develop a brace for osteoarthritic use in response to inquiries from a prominent doctor specializing in sports medicine, Dr. Frank Noyes. (Mar. 31 Trial Tr. at 47.)

Defendant unveiled its version a year later, in 1995, and began shipping it in about April or May of 1995. (Mar. 29 Trial Tr. at 160:15-160:21.) The evidence showed that at the latest, by late 1994 or early 1995, Defendant had learned of Plaintiffs' adjustable Unloader. (Brett Bledsoe Test., Mar. 29 Trial Tr. at 155:14-155:17; Gary Bledsoe Test., Mar. 31 Trial Tr. at 148:14-149:4.) The evidence also shows that by late February 1995, Defendant was aware of at least the '169 patent, but not the '806 patent. (Dan Tucker Test., Mar. 31 Trial Tr. at 180:20-181:25.)

ORDER – 7

Although Mr. Gary Bledsoe testified that he began to develop the Thruster only in response to Dr. Noyes's inquiries, and in utter ignorance of Plaintiffs' brace, it is difficult to believe that nobody within Defendant's organization was aware of Plaintiffs' new design, unveiled as it was at the AAOS convention in February 1994. However, even if Mr. Bledsoe had been ignorant of Plaintiffs' brace when he began to design the Thruster, the evidence shows that he knew of Plaintiffs' brace and that it was patented before he completed the design. Finally, although Defendant offered up the Tucker letter as evidence of its good-faith investigation of potential infringement, the letter was inadequate in content and analysis to constitute a basis upon which a conscientious inventor could lay his infringement concerns to rest. For these reasons, the Court finds an analysis of elements 1, 2, and 6 of the *Read* factors supports an award of enhanced damages.

However, the Court finds that analysis of the remaining relevant factors does not support an award of enhanced damages. Aside from the willfulness of Defendant's infringement, the Court does not find that the record shows conclusively that Defendant conducted itself in bad faith, thereby rendering itself more culpable. Although Plaintiffs accuse Defendant of employing a "shifting sands" approach, it is only natural for the parties to an action to adjust their litigation strategies and arguments as a case evolves and it becomes clear what the critical issues are. Furthermore, while there were numerous instances of inefficiency and delay, there is no evidence that they were introduced through bad-faith tactics on Defendant's part. Finally, the Court finds no evidence of bad faith in Defendant's move to add the Aligner and the Thruster 2 to the litigation. For these reasons, the analysis of element 3 is neutral (neither shows Defendant to be more culpable, nor mitigates) with respect to an award of enhanced damages.

Element 4, inquiring into Defendant's size and financial condition, weighs slightly against an award of enhanced damages. Although Defendant, a family-run company, is not "small," with revenues in the neighborhood of $100,000,000 during the period 1995-2003, enhanced damages could well impose an unbearable stress.

ORDER – 8

With respect to the closeness of the case, the fifth element, Plaintiffs point out that a unanimous jury returned a verdict rejecting all of Defendant's claims, found willful infringement, and awarded Plaintiffs the full measure of the damages requested. While the Court is mindful that this was a very technical, and even complex case, the complexity of a case is not indicative of how close it is on the merits. For this reason, element 5 is neutral with respect to enhanced damages.

The seventh element inquires into remedial actions by the Defendant. Although Defendant offers up its development of the Aligner and the Thruster 2 braces as evidence of remedial action, the evidence on the record belies this contention. Mr. Gary Bledsoe testified that there was a market demand for a lower-cost brace such as the Aligner. Defendant also argued that it had good reason to believe that the Thruster was not an infringing product. Given these two claims, the Court concludes that Defendant designed and sold the Aligner more in response to market pressures than in response to concern about infringing Plaintiffs' patents. After all, Mr. Bledsoe testified that "[w]e have always thought it was – that the No. 19 patents were invalid. Because we knew about a lot of prior art. Number two, we didn't infringe them anyway." (Gary Bledsoe Test., Mar. 31 Trial Tr. at 107:16-107:19.) If, as Defendant believed, there was no infringement, what did Defendant believe it needed to remedy? For these reasons, the Court finds that element 7 does not have a mitigating effect. However, the Court also declines to find that Defendant's failure to take remedial action renders Defendant more culpable. Thus, element 7 is neutral with respect to enhanced damages.

With respect to Defendant's motivation to harm Plaintiffs' business, without some evidence that Defendant specifically and maliciously sought to adversely impact Plaintiffs' business, the Court is reluctant to find that this element renders Defendant more culpable.

Finally, there is no evidence that Defendant sought to conceal its conduct in a way compounding its culpability. *See Russell Box Co. v. Grant Paper Box Co.*, 203 F.2d 177, 183 (1st Cir. 1953) (disapproving of the defendant's failure to preserve its records and to cooperate at trial on the issue of damages). Therefore, this element is neutral with respect to enhanced damages.

ORDER – 9

The Court finds that a holistic view of the circumstances in this case does not support an award of enhanced damages. While the Court is mindful that Defendant's infringement was found to be willful, the Court also notes that § 284 calls for damages "adequate to compensate for the infringement." 35 U.S.C. § 284. Because the Court finds that Defendant's conduct outside of the willfulness of its infringement does not render it more culpable, the Court finds that enhanced damages are not appropriate in this case.

However, the Court finds that an award of attorney fees under 35 U.S.C. § 285 is warranted. "Exceptional circumstances" within the meaning of the statute have been found to exist where infringement was willful. *Avia Group Int'l, Inc. v. L.A. Gear Calif., Inc.*, 853 F.2d 1557, 1567 (Fed. Cir. 1988). As the jury returned a finding that Defendant's infringement had been willful, the Court finds that "exceptional circumstances" warranting an award of attorney fees exist in this case.

In the Ninth Circuit, courts are required to support their determinations regarding attorney fees with a discussion of some or all of the twelve relevant criteria set forth in *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975). These factors are as follows:

> (1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the 'undesirability' of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases.

*Id*. A court "need not discuss each of the guidelines, so long as it discusses those most relevant to the particular case." *Quesada v. Thomason*, 850 F.2d 537, 539 (9th Cir. 1988) (citing *Kessler v. Assocs. Fin. Servs. Co.*, 639 F.2d 498 (9th Cir. 1981)).

In addition to the *Kerr* factors, the Court is mindful of the Federal Circuit's holding in *Mathis v. Spears*, a patent case, that where a prevailing party "has obtained excellent results, his attorney[s] should recover a fully compensatory fee. Normally this will encompass all hours reasonably expended on the litigation." 857 F.2d 749, 754 (Fed. Cir. 1988) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983)).

In the case at bar, the Court finds that factors 4, 6, 7, and 10 of the *Kerr* analysis are not relevant

ORDER – 10

and need not be considered or discussed.

The remaining *Kerr* factors and the Federal Circuit's admonishment in *Mathis* are directed to the same inquiry – whether the fee awarded reasonably compensates the prevailing party's attorney for work performed. The *Kerr* factors can further be separated into two broad categories: the first factor on its own, which inquires into whether the amount of time spent on the case was reasonable; and factors 2, 3, 5, 8, 9, 11 and 12, which inform the Court's inquiry into whether the hourly rates charged are reasonable.

With respect to the first *Kerr* factor, Plaintiffs submitted extensive documentation of hours worked. (Mathiowetz Decl., Dkt. No. 317.) Given the complexity of this case, the Court finds that the amount of hours spent by Plaintiffs' attorneys was reasonable.

Plaintiffs' billing records show that the attorney hourly rates generally ranged from $135.00 to $450.00. The Court has had ten years to observe and participate in the slow progress of this case, from original complaint through the end of the final jury trial. Over this period, the Court has had ample opportunity to note the complexity of the knee brace mechanisms involved and to appreciate the attorneys' corresponding attention to minute details, both factual and legal, in their prosecution of the action. Furthermore, in addition to the generally demanding business of preparation for trial, this matter also involved arguments before the Federal Circuit and a re-examination proceeding at the Patent Office. Finally, given that the jury awarded damages in the amount of $3,386,145, the amount of the fee award requested appears to be in line with, if not actually lower than, patent infringement cases in general. (Pls.' Mot. to Enhance Damages at 12 (citing AMERICAN INTELLECTUAL PROPERTY LAW ASSOCIATION, ECONOMIC SURVEY 2003 (estimating median costs of litigation for a patent infringement trial in which more than $1,000,000 at stake to be $2,000,000)).) For these reasons, which address the remaining relevant *Kerr* factors, the Court finds not only that Plaintiffs' allocation of hours between associates and senior partners to be reasonable and justified, but that the hourly rates themselves are reasonable and justified.

Finally, the compensatory nature of § 285 means that litigation expenses are to be included in an

ORDER – 11

award of attorney fees. *See Central Soya Co. v. Geo. A. Hormel & Co.*, 723 F.2d 1573, 1577 (Fed. Cir. 1983); *Lam, Inc. v. Johns-Manville Corp.*, 718 F.2d 1056, 1068 (Fed. Cir. 1983). In the case at bar, the Court finds that Plaintiffs' detailed breakdowns of litigation-related expenses (copy charges, FedEx packages, travel, etc.) reflect expenses reasonably incurred.

Accordingly, for all the reasons stated above, the Court finds that Plaintiffs have made an adequate showing that their requested attorney fees of $1,774,292.17 are reasonable.

Accordingly, Plaintiffs' motion for enhanced damages is DENIED and its motion for attorney fees is GRANTED.

With respect to the award of prejudgment interest in patent cases, the Supreme Court in *General Motors Corp. v. Devex Corp.* explained: "The standard governing the award of prejudgment interest under § 284 should be consistent with Congress' overriding purpose of affording patent owners complete compensation. In light of that purpose, we conclude that prejudgment interest should ordinarily be awarded." 461 U.S. 648, 655 (1983). Although Defendant argues that Plaintiffs have not shown that Generation II had to borrow money at a higher rate or suffered specific harm from the loss of use of the money, the Court does not find that this showing is necessary. Plaintiffs may have made very different investment decisions if they had had the cash in hand, rather than contemplating the necessity of borrowing money. In light of *Devex* and the Court's findings with respect to enhanced damages and attorney fees, the Court finds that an award of prejudgment interest is appropriate.

In addition, the Court finds that the prime rate is an appropriate rate to use in calculating the amount of prejudgment interest due. Like the court in *A&L Tech. v. Resound Corp.*, the Court finds that the prime rate better reflects the reality of the marketplace than the U.S. Treasury bill rate recommended by Defendant. 1995 WL 415146 *5 (N.D. Cal. 1995).

Finally, for all of the same reasons as stated above, the Court finds that the prejudgment interest must be compounded annually in order to fully compensate Plaintiffs for Defendant's infringement.

Accordingly, Plaintiffs' motion for prejudgment interest at the prime rate, compounded annually,

ORDER – 12

is hereby GRANTED.

IV.  CONCLUSION

In accordance with the foregoing, Defendant's motion for judgment as a matter of law (Dkt. No. 302) is DENIED, and Plaintiffs' motions for enhanced damages, attorney fees and prejudgment interest are GRANTED in part and DENIED in part (Dkt. Nos. 300, 316).  Plaintiffs are hereby awarded single damage in the amount of $3,386,145.00, attorney fees in the amount of $1,774,292.17, and prejudgment interest in the amount of $1,561,615.00.  Plaintiffs are directed to submit a proposed judgment form with updated figures, if necessary.

SO ORDERED this 10th day of June, 2005.

_____
UNITED STATES DISTRICT JUDGE

ORDER – 13